Peggy A. Tomsic (3879)
  tomsic@mgpclaw.com
James E. Magleby (7247)
  magleby@mgpclaw.com
Jennifer Fraser Parrish (11207)
  parrish@mgpclaw.com
**MAGLEBY & GREENWOOD, P.C.**
170 South Main Street, Suite 850
Salt Lake City, Utah 84101-3605
Telephone: 801.359.9000
Facsimile: 801.359.9011

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **DEREK KITCHEN, individually;  MOUDI SBEITY, individually; KAREN ARCHER, individually; KATE CALL, individually; LAURIE WOOD, individually;  and KODY PARTRIDGE, individually,**<br><br>        **Plaintiffs,**<br><br>**v.**<br><br>**GARY R. HERBERT, in his official capacity as Governor of Utah; JOHN SWALLOW, in his official capacity as Attorney General of Utah; and SHERRIE SWENSEN, in her official capacity as Clerk of Salt Lake County,**<br><br>        **Defendants.** | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br><br><br><br><br><br><br><br><br><br><br><br><br>**Case No.**<br><br>**Honorable** |

Plaintiffs Derek Kitchen, Moudi Sbeity, Karen Archer, Kate Call, Laurie Wood, and Kody Partridge (collectively, "Plaintiffs") allege and complain against Defendants Gary R. Herbert, John Swallow, and Sherrie Swensen, in their official capacities (collectively, "State of Utah" or "Defendants"), as follows:

**INTRODUCTION**

1.      More than 40 years ago, the Supreme Court of the United States recognized that "[m]arriage is one of the 'basic rights of man,' fundamental to our very existence and survival."  *Loving v. Virginia*, 388 U.S. 1, 12 (1967).  But today, as a result of the approval of Amendment 3 to the Utah Constitution on November 2, 2004, and its effective date on January 1, 2005 ("Amendment 3"), the State of Utah discriminates against and denies its gay and lesbian citizens access to marriage by providing in its constitution that "[m]arriage consists only of the legal union between a man and a woman."  Utah Constitution, Art. I, sec. 29.  Amendment 3 further provides that "[n]o domestic union, however denominated, may be recognized as a marriage or given the same or substantially equivalent legal effect."  *Id.*  This unequal treatment of gay men and lesbians by the State of Utah denies them the basic liberties and equal protections under the law that are guaranteed by the Fourteenth Amendment to the United States Constitution.

2.      For these reasons, Plaintiffs seek a declaration from this Court that Amendment 3 violates the Fourteenth Amendment to the United States Constitution and

is therefore unlawful, and a judgment to permanently enjoin enforcement of Amendment 3, and any other Utah statute that seeks to exclude gay men and lesbians from access to civil marriage.

## JURISDICTION AND VENUE

3.      This action raises questions under the Constitution of the United States and 42 U.S.C. § 1983, and thus this Court has jurisdiction over all claims for relief pursuant 28 U.S.C. § 1331.

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because all Defendants reside in this District and the State of Utah.  Venue is also proper because a substantial part of the events giving rise to the claims occurred in this district.

## NATURE OF THE CASE

5.      This action, pursuant to 42 U.S.C. § 1983, seeks: (1) a declaration that Amendment 3 to the Utah Constitution, which denies gay and lesbian individuals the opportunity to marry civilly and enter into the same officially sanctioned family relationship with their loved ones as heterosexual individuals are granted the opportunity to do; and also denies same-sex couples legally married in other states from having their marriage recognized in the State of Utah as an officially sanctioned family relationship with their loved ones, the same as heterosexual couples legally married in other states are officially recognized in the State of Utah, is unconstitutional under the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United

States Constitution; and (2) a permanent injunction preventing Defendants from

enforcing Amendment 3 against Plaintiffs and compelling Defendants to recognize the

Iowa marriage of Plaintiffs Karen Archer and Kate Call as a legal marriage in the State

of Utah.

6.      Plaintiffs also seek (1) a declaration that Utah Code Ann. § 30-1-2(5),

which prohibits and declares void a marriage "between persons of the same sex"; and

Utah Code Ann. § 30-1-4.1, which states that "[i]t is the policy of this state to recognize

as marriage only the legal union of a man and a woman" and that "[e]xcept for a

relationship of marriage between a man and a woman recognized pursuant to this

chapter, this state will not recognize, enforce or give legal effect to any law creating any

legal status, rights, benefits, or duties that are substantially equivalent to those provided

under Utah law to a man and a woman because they are married" (collectively

"Marriage Discrimination Statutes"), are unconstitutional under the Due Process and

Equal Protection Clauses of the Fourteenth Amendment to the United States

Constitution; and (2) a permanent injunction preventing Defendants from enforcing

those provisions against Plaintiffs and compelling the Defendants to recognize the Iowa

marriage of Plaintiffs Karen Archer and Kate Call as a legal marriage in the State of

Utah.

7.      Plaintiffs Derek Kitchen and Moudi Sbeity are gay individuals in a

committed relationship.  Plaintiffs Laurie Wood and Kody Partridge are lesbian

4

individuals in a committed relationship.   Both couples desire to express their love for, and commitment to, one another by getting married and obtaining official sanction for their family from the State of Utah, but Amendment 3 and the Marriage Discrimination Statutes deny them that right in violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution.

8.     Plaintiffs Karen Archer and Kate Call are lesbian individuals in a committed relationship. Those Plaintiffs were legally married in the State of Iowa to express their love for, and commitment to, one another.  As citizens of the State of Utah, they desire to have the State of Utah officially sanction their family, but Amendment 3 and the Marriage Discrimination Statues bar the State from treating them the same as heterosexual couples who are Utah citizens married under the laws of other states, and from recognizing their fundamental liberty and right of marriage in violation of the Due Process and Equal Protection Clauses of the United States Constitution.

9.     To enforce the rights afforded by the United States Constitution, Plaintiffs bring this suit, pursuant to 42 U.S.C. § 1983, for declaratory and injunctive relief against the enforcement of Amendment 3 and the Marriage Discrimination Statutes.  Plaintiffs also seek to recover all their attorneys' fees, costs and expenses incurred in this action and any other relief that this Court may order.

5

**PARTIES**

10.     Plaintiff Derek Kitchen ("Kitchen") is a Utah citizen and resides in Salt Lake County, Utah.

11.     Plaintiff Moudi Sbeity ("Sbeity") is a Utah citizen and resides in Salt Lake County, Utah.

12.     Plaintiff Karen Archer ("Archer") is a Utah citizen and resides in Wasatch County, Utah.

13.     Plaintiff Kate Call ("Call") is a Utah citizen and resides in Wasatch County, Utah.

14.     Plaintiff Laurie Wood ("Wood") is a Utah citizen and resides in Salt Lake County, Utah.

15.     Plaintiff Kody Partridge ("Partridge") is a Utah citizen and resides in Salt Lake County, Utah.

16.     Defendant Gary R. Herbert is the Governor of the State of Utah ("Governor").  In his official capacity, the Governor is the chief executive officer of the State of Utah.  It is his responsibility to ensure that the laws of the State are properly enforced.  The Governor maintains an office in Salt Lake City, Utah.

17.     Defendant John Swallow is the Attorney General of the State of Utah ("Attorney General").  In his official capacity, the Attorney General is the chief legal officer of the State of Utah.  It is his duty to see that the laws of the State are uniformly

6

and adequately enforced.  The Attorney General maintains an office in Salt Lake City, Utah.

18.     Defendant Sherrie Swensen is the Clerk for Salt Lake County.  She is responsible for maintaining vital records of marriages, issuing marriage licenses, and performing civil marriage ceremonies in Salt Lake County.

19.     Defendants, and those subject to their supervision, direction, and control, are responsible for the enforcement of Amendment 3 and the Marriage Discrimination Statutes.  The relief requested in this action is sought against each Defendant, as well as against each Defendant's officers, employees, and agents, and against all persons acting in cooperation with Defendant(s), under their supervision, at their direction, or under their control.


## FACTUAL BACKGROUND

### Amendment 3

20.     Gay and lesbian individuals have faced a long and painful history of societal and government-sponsored discrimination in this country.  Although their sexual orientation bears no relation to their ability to contribute to society, gay men and lesbians have been singled out for discriminatory treatment. They have faced unconstitutional criminal penalties for private sexual conduct between consenting adults,

harassment, hate crimes, and discrimination in employment and many other areas. They have even been the subject of laws stripping them of rights afforded to all other citizens.

21.     Utah has been among the states that have enacted laws stripping gay men and lesbians of rights afforded to all other citizens.  Gay men and lesbians also have been the subject of hate crimes in Utah.

22.     The Utah Legislature enacted Utah Code Ann. § 30-1-2, which prohibits and declares void a marriage "between persons of the same sex."  Utah Code Ann. § 30-1-2(5).  The Utah Legislature also enacted Utah Code Ann. § 30-1-4.1 which states that "[i]t is the policy of this state to recognize as marriage only the legal union of a man and a woman" and that "[e]xcept for a relationship of marriage between a man and a woman recognized pursuant to this chapter, this state will not recognize, enforce or give legal effect to any law creating any legal status, rights, benefits, or duties that are substantially equivalent to those provided under Utah law to a man and a woman because they are married."  Utah Code Ann. § 30-1-4.1(1)(a) & 1(b).

23.     Nonetheless, gay men, lesbians and other proponents of equality in Utah have continued to press for the recognition of gay men and lesbians' rights to equal treatment, including same-sex marriage, and sought protection under the law for hate crimes against them.

24.     As gay men, lesbians and others continued to fight to obtain equal rights for gay men and lesbians in Utah, proponents of same-sex marriages in other states were beginning to be successful in having laws barring same sex marriage struck down as unconstitutional.  For example, in Massachusetts, the Supreme Judicial Court of Massachusetts, on November 18, 2003, held the denial of marriage licenses to same-sex couples violated provisions of the Massachusetts Constitution guaranteeing individual liberty and equality, and was not rationally related to a legitimate state interests.  *See Goodridge v. Department of Public Health*, 798 N.E.2d 941 (Mass. 2003).

25.     Fearing that Utah would be forced to sanction gay marriages legally performed in other states and/or that the Marriage Discrimination Statutes might be held unconstitutional in light of cases in state and federal courts in other states, opponents of same-sex marriage began an effort to put an initiative on the November 2, 2004, ballot that would amend the Utah Constitution to ban same-sex marriage, arguing that the same-sex marriage ban would be on firmer ground if it were in the Utah Constitution.

26.     In the 2004 General Session of the Utah Legislature, the Utah Legislature passed a Joint Resolution of Marriage proposing to amend the Utah Constitution to add a provision relating to marriage (the "Resolution").  In that Resolution, two-thirds of all the members elected to each of the legislative houses voted to propose to enact an amendment to the Utah Constitution, Utah Constitution Article I, Section 29, to read: "(1)

9

Marriage consists of only the legal union between a man and a woman. (2) No other domestic union, however denominated, may be recognized as a marriage or given the same or substantially equivalent legal effect."  In addition, the Resolution directed the Utah Lieutenant Governor to submit the prosed amendment to the voters of Utah at the next regular general election, which was on November 2, 2004, and provided that, if a majority of the voters approved the amendment, it was to take effect on January 1, 2005.  Ten other states had similar constitutional amendments on their ballots for the 2004 general election.

     27.    The proposed constitutional amendment was placed on the ballot in the November 2, 2004 general election and became known as Constitutional Amendment 3 ("Amendment 3").  The Utah Voter Information Pamphlet General Election November 2, 2004 ("Pamphlet"), prepared under the direction of the Lieutenant Governor,  stated that Amendment 3 would do the following:

> Third, the Amendment prohibits any other domestic union from being given the same or substantially equal legal effect as is given to a marriage between a man and a woman. Presently when a man and a woman marry, they receive certain rights, benefits, and obligations provided in the law.  A married man and woman receive those rights, benefits, and obligations automatically, by operation of law and solely by virtue of being married.  The Amendment prohibits a domestic union from being given those same or similar rights, benefits, and obligations.  The scope of that prohibition may be more precisely defined by Utah courts as they interpret the provision in the context of lawsuits that may arise.

Pamphlet at 35 (emphasis added).

28.     Thus, the express and stated purpose of the ballot initiative was to single out gay men and lesbians alone by stripping them of federal constitutional protections that apply to all other citizens, and state protections and rights that are granted to all heterosexual married couples in Utah by operation of law.

29.     The proponents of Amendment 3 – Utah State Legislators – stated that Amendment 3 was necessary to: "maintain[] public morality, the justified preference for heterosexual marriage with its capacity to perpetuate the human race and the importance of raising children in that preferred relationship."  *Id.* at 36.   They further stated that Amendment 3 would ensure the continuation of "the ideal relationship where men, women and children thrive best and that is an enduring natural marriage between a man and a woman."  *Id.*  Thus, the express and stated purpose of Amendment 3 was to further privately held moral views that same-sex couples were not moral and were inferior to heterosexual couples.  These are the same types of justifications that were used to advance and preserve racist laws, directed against non-white minorities, such as laws banning interracial marriage.

30.     It was subsequently reported that 65.86% of the ballots cast on November 2, 2004, voted to amend the Utah Constitution to add Amendment 3.  The Amendment went into effect on January 1, 2005.

31.     Since January 1, 2005, same-sex couples in Utah have been denied marriage licenses on account of Amendment 3.  Meanwhile, nine other states and the

District of Columbia now allow same-sex marriages.  However, under Amendment 3, same-sex couples legally married under the laws of other states, who are also Utah citizens, do not have their marriages officially sanctioned by the State of Utah.  In other words, if a same-sex couple is legally married in another state, that marriage is not recognized in Utah.  Utah citizens that are same-sex couples legally married under the laws of other states are treated differently than Utah citizens that are heterosexual couples legally married under the laws of other states.  They are not afforded the same protections, rights and official sanction as such heterosexual couples.

32.    Amendment 3 and the Marriage Discrimination Statutes have created a legal system in Utah in which civil marriage is restricted solely and exclusively to opposite-sex couples, and in which gay and lesbian individuals are denied the right to enter into a civil marriage with the person of their choice.  In addition, under Amendment 3 and the Marriage Discrimination Statutes, gay men and lesbians who are citizens of the State of Utah are not entitled to the rights and responsibilities acquired through marriage by operation of law, even if they are legally married in another state. The inability to marry and the denial of official sanction of a legal marriage in another state, denies gay and lesbian individuals the personal and public affirmation that accompanies marriage.  It also denies them the legal protections afforded married couples, such as child custody, inheritance and spousal medical

12

decision rights, that are granted to opposite-sex married couples by operation of law upon marriage.

<u>Marriage is a Fundamental Right</u>

33.     Marriage is a supremely important social institution, and the "freedom to marry has long been recognized as one of the vital personal rights essential to the orderly pursuit of happiness by free men."   *Loving v. Virginia,* 388 U.S. 1, 12 (1967). "Marriage is widely regarded as the definitive expression of love and commitment in the United States."  Amendment 3 and the Marriage Discrimination Statutes "reserve[] the most socially valued forms of relationship (marriage) for opposite-sex couples."  *See Perry v. Schwarzenegger,* 704 F. Supp.2d 921, 974 (N.D. Cal. 2010).

34.     "Same sex couples are identical to opposite-sex couples in the characteristics relevant to the ability to form successful marital union.  Like opposite-sex couples, same-sex couples have happy, satisfying relations and form deep emotional bonds and strong commitments to their partners.  Standardized measures of relationship satisfaction, relationship adjustment and love do not differ depending on whether a couple is same-sex or opposite-sex."  *Id.* at 967.

35.     Amendment 3 and the Marriage Discrimination Statutes "place[] the force of law behind stigmas against gay men and lesbians, including:  gay men and lesbians do not have intimate relationships similar to heterosexual couples; gay men and lesbians are not as good as heterosexuals; and gay and lesbian relationships do not

13

deserve the full recognition of society." *Id.* at 973. Amendment 3 and the Marriage Discrimination Statutes "single[] out gay men and lesbians and legitimate[] their unequal treatment." Amendment 3 and the Marriage Discrimination Statutes "perpetuate[] the stereotype that gays and lesbians are incapable of forming long-term loving relationships and that gays and lesbians are not good parents." *Id.* at 979.

Plaintiffs Kitchen, Sbeity, Wood and Partridge Have Been Denied the Right to Marry,
and
The State of Utah Refuses to Recognize the Iowa Marriage of Plaintiffs Archer and Call

36. Four of the Plaintiffs are gay men and lesbians who are residents of Utah and involved in long-term, serious relationships with individuals of the same sex and desire to marry those individuals. They are now prohibited from doing so as a direct result of Defendants' enforcement of Amendment 3 and the Marriage Discrimination Statutes.

37. On March 22, 2013, Plaintiffs Kitchen and Sbeity applied for a marriage license from Defendant Swensen, the Salt Lake County Clerk, but were denied because they are a same-sex couple.

38. On March 25, 2013, Plaintiffs Wood and Partridge applied for a marriage license from Defendant Swensen, the Salt Lake County Clerk, but were denied because they are a same-sex couple.

14

39.    As a result of Amendment 3 and the Marriage Discrimination Statutes, those Plaintiffs are barred from marrying the individual they wish to marry.

40.    Plaintiffs' inability to marry and to have their relationship recognized by the State as a marriage with the protections, dignity and respect accorded to married opposite-sex couples has caused them significant hardship, including but not limited to the deprivation of rights guaranteed by the Fourteenth Amendment and Utah state laws afforded opposite-sex married couples, and subjected them to severe humiliation, emotional distress, pain, suffering, psychological harm, and stigma.  It is estimated that the denial of the right to marry, deprives same-sex couples of literally hundreds of protections and rights that opposite-sex married couples enjoy.

41.    Each day that Plaintiffs are denied the freedom to marry, and are denied the State's sanction of their lawful marriage under Iowa law, they suffer irreparable harm as a direct result of Defendants' violation of their constitutional rights.

42.    If the enforcement of Amendment 3 and the Marriage Discrimination Statutes is not enjoined, Defendants will continue to enforce an unconstitutional law against Plaintiffs, thereby depriving them of their constitutional rights under the Fourteenth Amendment.  The declaratory and injunctive relief sought by Plaintiffs, on the other hand, will require Defendant Swensen to issue  Plaintiffs Wood, Partridge, Kitchen, and Sbeity their marriage licenses.  The relief sought also will require

15

Defendants Herbert and Swallow to officially sanction the Iowa marriage of Plaintiffs Archer and Call as valid within the State of Utah.

**CLAIMS FOR RELIEF**
**FIRST CLAIM FOR RELIEF**
**(Violation of Plaintiffs' Constitutional Due Process Rights)**

43.     Plaintiffs incorporate by this reference allegations contained in paragraphs 1 through 42 above.

44.     The Due Process Clause of the Fourteenth Amendment of the United States Constitution provides that no "State [shall] deprive any person of life, liberty, or property, without due process of law." U.S. Const Amend XIV, § 1.  Individuals are protected by the Due Process Clause from arbitrary government intrusion into life, liberty and property.

45.     Amendment 3 and the Marriage Discrimination Statutes violate fundamental liberties that are protected by the Due Process Clause of the Fourteenth Amendment, both on its face and as applied to Plaintiffs.

46.     The freedom to marry is one of the fundamental liberties protected by the Due Process Clause of the Fourteenth Amendment.  Amendment 3 and the Marriage Discrimination Statutes violate this fundamental right protected by the Due Process Clause because it prevents Plaintiffs from marrying the person of his or her choice and from having their legal marriage in another state from being legally recognized in Utah;

16

and the choice of marriage is sheltered by the Fourteenth Amendment from Utah's unwarranted usurpation of that choice.

47.     Amendment 3 and the Marriage Discrimination Statutes impinge on fundamental liberties protected by the Due Process Clause by discriminating against gay men and lesbians and denying them the opportunity to marry civilly, to have their civil marriage in another state legally recognized, and to enter into or maintain the same officially sanctioned family relationship with their loved ones as opposite-sex individuals. For example, by denying those individuals the same "marriage" designation afforded to opposite-sex couples, the State of Utah is stigmatizing gay men and lesbians, as well as their children and families, and denying them the same dignity, respect, and stature afforded officially recognized opposite-sex family relationships.  In addition, this marriage discrimination denies gay men and lesbians the legal protections afforded by Utah law to opposite-sex married couples.

48.     Because Plaintiffs seek to exercise their fundamental right to marry and to have their marriage in another state legally recognized, their claim that Amendment 3 and the Marriage Discrimination Statutes violate their Due Process rights is subject to strict scrutiny.  Further, it is irrelevant that the Utah voters voted for Amendment 3 because fundamental liberties may not be submitted to a vote; election outcomes do not determine fundamental rights protected by the Fourteenth Amendment.

17

49.     Amendment 3 and the Marriage Discrimination Statutes are unconstitutional under the Due Process Clause because they are not narrowly tailored to a compelling government interest.

50.     As a result, the Court, pursuant to 28 U.S.C. § 2201, should construe Amendment 3 and enter a declaratory judgment stating that this law and any other Utah law that bars same-sex marriage, including the Marriage Discrimination Statutes, violate the Due Process Clause of the Fourteenth Amendment, and should enter a permanent injunction enjoining enforcement or application of Amendment 3 and any other Utah law that bars same sex-marriage, and compelling Defendants to legally recognize the marriage of Plaintiffs Archer and Call in the State of Utah.

## SECOND CLAIM FOR RELIEF
### (Violation of Plaintiffs' Constitutional Equal Protection Rights)

51.     Plaintiffs incorporate by this reference allegations contained in paragraphs 1 through 50 above.

52.     The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. Amend XIV, § 1.  The Fourteenth Amendment's equal protection guarantee embodies the constitutional ideal that "all persons similarity situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985).

18

53.     Amendment 3 and the Marriage Discrimination Statutes violate the Equal Protection Clause of the Fourteenth Amendment, both on their face and as applied to Plaintiffs.

54.     For purposes of the Equal Protection Clause, Amendment 3 and the Marriage Discrimination Statutes should be subject to heightened scrutiny because gay men and lesbians are the type of minority strict scrutiny was designed to protect. Sexual orientation is a factor that "generally provides no sensible ground for differential treatment," *Cleburne,* 473 U.S. at 440-41, and sexual orientation meets all four factors requiring heightened scrutiny for a classification: (1) gay and lesbian people have suffered a significant history of discrimination in this country: (2) sexual orientation generally bears no relation to ability to perform or contribute to society; (3) discrimination against gay and lesbian people is based on an immutable or distinguishing characteristic that defines them as a group; and (4) not withstanding a measure of recent progress, gay and lesbian people are minorities with limited power to protect themselves from adverse outcomes in the political process, as demonstrated by Amendment 3.

55.     Under the heightened scrutiny standard, Amendment 3 and the Marriage Discrimination Statutes violate the Equal Protection Clause because they are not "substantially" related to an important governmental purpose.  There are no distinctions among lesbians, gay men and heterosexuals that amount to undeniable and real

differences that the government might need to take into account in legislating.  The real

purpose behind Amendment 3 and the Marriage Discrimination Statutes is prejudice

against gay men and lesbians based on private moral views that are not supported by a

legitimate factual basis.

56.     Even if Amendment 3 and the Marriage Discrimination Statutes are not

analyzed under the heightened scrutiny standard, they still violate the Equal Protection

Clause because the classification drawn by Amendment 3 and the Marriage

Discrimination Statues between opposite-sex and same-sex couples is not rationally

related to a legitimate state interest.  A state does not have a legitimate interest in

disadvantaging an unpopular minority group merely because the group is unpopular, or

there are private views that same-sex couples are morally inferior to opposite-sex

couples or are inferior because there is something wrong with them.  In fact,

Amendment 3 and the Marriage Discrimination Statutes harm the state interest in

equality because it requires that men and women be treated differently only based on

discredited and antiquated notions of gender.

57.     Amendment 3 and the Marriage Discrimination Statutes violate the Equal

Protection Clause because they discriminate against gay men and lesbians by denying

them a right to marry the person of their choice, whereas heterosexual men and women

may do so freely, and it disadvantages a suspect class in preventing only gay men and

lesbians, not heterosexuals, from marrying.  Amendment 3 and the Marriage

20

Discrimination Statutes also violate the Equal Protection Clause because they discriminates against gay men and lesbians legally married in another state by denying them the official sanction of their marriage in the State of Utah and the rights and benefits that flow from marriage, whereas heterosexual men and women legally married in another state have their marriage officially sanctioned by the State of Utah, and receive, by operation of law the rights and benefits that flow from marriage, and it disadvantages a suspect class in preventing only gay men and lesbians, not heterosexuals, from having out-of-state marriages not recognized in the State of Utah.

58.    Amendment 3 and the Marriage Discrimination Statutes restrict civil marriage to individuals of the opposite sex; gay and lesbian individuals are therefore unable to marry the person of their choice or have their same-sex marriage in another state legally recognized in Utah.  Thus, Utah law treats similarly-situated people differently by providing civil marriage to heterosexual couples, but not to gay and lesbian couples.  As a consequence, gay and lesbian couples are not provided the tangible benefits and privileges of marriage.  Even if these benefits and privileges were through some other mechanism besides civil marriage, it still would be unequal because the designation "marriage," enjoys a long history and uniform recognition.  Gay men and lesbians are therefore unequal in the eyes of the law, and their families are denied the same respect and legal rights as officially sanctioned families of opposite sex

21

individuals.  By purposefully denying civil marriage to gay and lesbian individuals, Utah's

ban on same-sex marriage discriminates on the basis of sexual orientation.

59.     The disadvantage Amendment 3 and the Marriage Discrimination Statutes

impose upon gay men and lesbians is the result of disapproval or animus against a

politically unpopular group.  Amendment 3 and the Marriage Discrimination Statutes

impose a special disability upon those persons alone and deprive them of specific legal

protections afforded to opposite-sex married couples.  Accordingly, Amendment 3 and

the Marriage Discrimination Statutes violate the Equal Protection Clause of the

Fourteenth Amendment because they single out gay men and lesbians for a disfavored

legal status, thereby creating a category of "second-class citizens."

60.     Amendment 3 and the Marriage Discrimination Statues also violate the

Equal Protection Clause because they discriminate on the basis of gender.  They

distinguish between couples consisting of a man and a woman and couples consisting

of individuals of the same sex.  Thus, the limitation on civil marriage depends upon an

individual person's gender; a man who wishes to marry a man may not do so because

he is a man, and a woman may not marry a woman because she is a woman.

61.     As a result, the Court, pursuant to 28 U.S.C. § 2201, should construe

Amendment 3 and enter a declaratory judgment stating that this law and any other Utah

law that bars same-sex marriage, including the Marriage Discrimination Statutes, violate

the Equal Protection Clause of the Fourteenth Amendment, and should enter a

permanent injunction enjoining enforcement or application of Amendment 3 and any other Utah law that bars same sex-marriage, and compelling Defendants to legally recognize the marriage of Plaintiffs Archer and Call in the State of Utah.

### THIRD CLAIM FOR RELIEF
### (Violation of 42 U.S.C. § 1983)

62.    Plaintiffs incorporate by this reference allegations contained in paragraphs 1 through 61 above.

63.    Insofar as they are enforcing the terms of Amendment 3 and/or the Marriage Discrimination Statutes, Defendants, acting under color of state law, are depriving and will continue to deprive Plaintiffs of numerous rights secured by the Fourteenth Amendment of the United States Constitution in violation of 42 U.S.C. § 1983.

64.    As a result, the Court, pursuant to 28 U.S.C. § 2201, should construe Amendment 3 and enter a declaratory judgment stating that this law and any other Utah law that bars same-sex marriage, including the Marriage Discrimination Statutes, violate 42 U.S.C. § 1983, and should enter a permanent injunction enjoining enforcement or application of Amendment 3 or any other Utah law that bars same-sex marriage, and to compel Defendants to legally recognize the marriage of Plaintiffs Archer and Call in the State of Utah.

**FOURTH CLAIM FOR RELIEF**
**(Irreparable Injury)**

65.     Plaintiffs incorporate by this reference allegations contained in paragraphs 1 through 64 above.

66.     Plaintiffs are now severely and irreparably injured by Amendment 3 and the Marriage Discrimination Statutes– state laws that violate the Due Process and Equal Protection Clauses of the Fourteenth Amendment.  By way of example only, Plaintiffs' injury as a result of Amendment 3 and the Marriage Discrimination Statutes includes the deprivation of rights guaranteed under the Fourteenth Amendment; and the severe humiliation, emotional distress, pain, suffering, psychological harm, and stigma caused by the inability to marry the ones they love and have society accord their unions and their families the same respect and dignity enjoyed by opposite-sex unions and families. Plaintiffs' injuries will be redressed only if this Court declares Amendment 3 and the Marriage Discrimination Statutes unconstitutional and enjoins Defendants from enforcing them, and compels Defendants to legally recognize the marriage of Plaintiffs Archer and Call in the State of Utah.

67.     An actual and judicially cognizable controversy exists between Plaintiffs and Defendants regarding whether Amendment 3 and the Marriage Discrimination Statutes violate the Dues Process and Equal Protection Clauses of the Fourteenth

24

Amendment.  Defendants are presently enforcing these state laws to the detriment of Plaintiffs.


**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs requests the entry of a judgment in their favor and against Defendants as follows:

1.      A declaratory judgment, pursuant to 28 U.S.C. § 2201, declaring that Amendment 3 and any other Utah law that bars same-sex marriage, including the Marriage Discrimination Statutes, violate the Due Process and Equal Protection Clauses of the Fourteenth Amendment and 42 U.S.C. § 1983.

2.      A permanent injunction enjoining enforcement or application of Amendment 3 and any other Utah law that bars same sex-marriage, including the Marriage Discrimination Statutes, and compelling Utah to recognize the marriage of Plaintiffs Archer and Call as a marriage in the State of Utah.

3.      A judgment awarding Plaintiffs their costs of suit, including reasonable attorney' fees under 42 U.S.C. § 1988, and such other and further relief to which they may be entitled.

DATED this 25th day of March 2013.

MAGLEBY & GREENWOOD, P.C.

James E. Magleby
Peggy A. Tomsic
Jennifer Fraser Parrish

Attorneys for Plaintiffs