Peggy A. Tomsic (3879)
  tomsic@mgpclaw.com
James E. Magleby (7247)
  magleby@mgpclaw.com
Jennifer Fraser Parrish (11207)
  parrish@mgpclaw.com
**MAGLEBY & GREENWOOD, P.C.**
170 South Main Street, Suite 850
Salt Lake City, Utah 84101-3605
Telephone: 801.359.9000
Facsimile: 801.359.9011

Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **DEREK KITCHEN, individually; MOUDI SBEITY, individually; KAREN ARCHER, individually, KATE CALL, individually; LAURIE WOOD, individually; and KODY PARTRIDGE, individually,**<br><br>　　Plaintiffs,<br><br>v.<br><br>**GARY R. HERBERT, in his official capacity as Governor of Utah; JOHN SWALLOW, in his official capacity as Attorney General of Utah; and SHERRIE SWENSEN, in her official capacity as Clerk of Salt Lake County,**<br><br>　　Defendants. | **PLAINTIFFS' OPPOSITION TO STATE DEFENDANTS' MOTION FOR STAY PENDING APPEAL**<br><br><br><br><br><br><br><br>Case No.  2:13-cv-00217-RJS<br><br>Honorable Robert J. Shelby |

Plaintiffs Derek Kitchen, Moudi Sbeity, Karen Archer, Kate Call, Laurie Wood, and Kody Partridge (collectively, "Plaintiffs"), by and through their counsel of record, Magleby & Greenwood, P.C., respectfully submit this Plaintiffs' Opposition to State Defendants' Motion for Stay Pending Appeal.

## INTRODUCTION

In a thorough opinion that fairly considered every argument presented by the parties in their respective motions for summary judgment, this Court declared Utah's Marriage Discrimination Laws as unconstitutional "because [they] den[y] the Plaintiffs their rights to due process and equal protection under the Fourteenth Amendment of the United States Constitution," and accordingly enjoined the State from enforcing them. Memorandum Decision and Order ("Order") at 53, Dkt. #90. Notably, in the Order, this Court also recognized the State Defendants' admission that the State of Utah's prohibition on same-sex marriage harms the Plaintiffs. *Id.* at 25. Notwithstanding this undisputed harm, the State Defendants now ask this Court to stay its Order pending appeal. However, the State Defendants have not met their burden of showing that they are entitled to a stay under the law of this Circuit. The State Defendants do not have a likelihood of succeeding on appeal and a stay would not serve the public interest. Plaintiffs would suffer numerous hardships of constitutional magnitude if a stay were to be issued, while the State Defendants have not shown how they would suffer in any meaningful way if the Order were enforced. Accordingly, the State Defendants' motion for a stay should be denied.

**ARGUMENT**

**I.     STANDARD IN THIS CIRCUIT FOR GRANTING A STAY**

Under the applicable legal standard for obtaining a stay pending appeal, the court considers four factors: "(1) whether the party seeking the stay has made a strong showing that it is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Jubber v. Search Mktg. Direct, Inc.*, No. 2:09mc869DAK, 2009 U.S. Dist. LEXIS 97522, at *8-9 (D. Utah Oct. 16, 2009) (citing *Nken v. Holder*, 129 S. Ct. 1749, 1756, 173 L. Ed. 2d 550 (2009)). "The moving party bears the burden of establishing these factors in order to show 'that the circumstances justify an exercise of the court's discretion.'" *Id.* at *9 (quoting *Nken*, 129 S. Ct. at 1760).

**II.    THE STATE DEFENDANTS HAVE MADE NO "STRONG SHOWING" THAT THEY ARE LIKELY TO SUCCEED ON APPEAL AND, INDEED, THEY ARE UNLIKELY TO SUCCEED ON APPEAL**

The State Defendants are not likely to succeed on the merits of their appeal and have made no "strong showing" otherwise. Instead, they have simply reiterated arguments already set forth in the briefs submitted during the summary judgment proceedings. The contentions they raise in their motion were already carefully explored at oral argument, thoughtfully analyzed by the Court, and properly decided in a lengthy, clear, and careful decision. Moreover, the State Defendants' citation to two district court opinions, both currently on appeal in a different Circuit, and an Eighth Circuit opinion, are unavailing. *See* Motion at 3. These cases do not support a likelihood of success,

as they are not binding in this Circuit. Furthermore, these decisions pre-date *Windsor*, which is one of the primary authorities upon which this Court relied in its Order.

In sum, the State Defendants have not set forth any reason why an appellate court would disagree with this Court's Order, particularly in this case where the record is composed of undisputed facts and the issues comprise matters of law as to which the State Defendants have cited no authority -- much less controlling authority -- that calls this Court's Order into doubt. Accordingly, the State Defendants have not met their burden of establishing a likelihood of success on appeal, and this Court should deny their request for a stay.

### III. THERE IS NO THREAT OF IRREPARABLE HARM TO THE STATE ABSENT A STAY

To obtain a stay, the State Defendants must show that there is a threat of irreparable harm to them absent issuance of the stay. Importantly, because many same-sex couples have already been married in Utah at the time of this filing, the State Defendants' burden is to show that there would be irreparable harm from *additional* same-sex marriages being performed.

This Court clearly found that the State of Utah would not suffer irreparable harm by allowing same-sex couples to marry because it found that the State failed to show any relationship, let alone a rational relationship, between the purported state interests and allowing same-sex couples to marry. Order at 41 ("[T]he court finds that Amendment 3 bears no rational relationship to any legitimate state interests . . . ."). Accordingly, allowing same-sex marriages to occur pending the appeal of this matter will not damage any legitimate state interest

Even without this finding, the State Defendants have not explained how allowing some same-sex couples to marry, thereby assuring their access to equal rights pending appellate review, would cause any harm to the State, or to any other party.

Civil marriage is an institution that is administratively well established. The State has not pointed to any burden caused by this Court's decision, other than to voice an unsubstantiated and speculative harm from operating under a "cloud of uncertainty" and threatening harm "to the democratic process in Utah."[1] Motion at 4. However, any such abstract "harm" alleged by the State Defendants cannot justify depriving Plaintiffs and other same-sex couples of their constitutional rights, or outweigh the real, concrete injuries resulting to the Plaintiffs which the State Defendants have admitted in these proceedings.

---

[1] The State Defendants argue that there is irreparable harm whenever an enactment of a state is enjoined. Motion at 4. In so doing, they cite to *Coalition for Econ. Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997), a case in which the Ninth Circuit had found the challenged state measure to be constitutional, and that granting the stay would be tantamount to extending the district court's grant of a preliminary injunction which the Ninth Circuit reversed. Similarly, the basis for the Rehnquist opinion in *New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977), was the belief that the statute at issue would be found to be valid — which it was. This is the opposite situation of this case, where this Court has ruled that the laws at issue violate the United States Constitution. In fact, this Court found two separate and independent violations of the Fourteenth Amendment based on the Supreme Court's recent pronouncement on the unconstitutionality of DOMA in *Windsor.* Only one of these two bases needs to survive the Tenth Circuit's review for Utah's laws to be unconstitutional, making the likelihood of unconstitutionality all the greater. The State does not suffer irreparable harm where the law that is enjoined is likely unconstitutional. Otherwise, any time a state were seeking a stay of an injunction of an unconstitutional law, the state would win. This would unduly tip the scale in favor of the government in any case challenging a government enactment, and against the constitutional rights of the citizenry.

Indeed, this Court in its decision already recognized that its decision will not create any problem for the state. It will only require the State to apply its existing laws to same-sex couples. There will be no need to establish new laws, new procedures, or new administrative requirements. *See* Order at 47-48 ("[T]he process of allowing same-sex marriage is straightforward and requires no change to state tax, divorce, or inheritance laws."); *cf. Perry v. Schwarzenegger*, 704 F. Supp. 2d 921, 928, 1003 (N.D. Cal. 2010), *rev'd on other grounds* 671 F.3d 1052 (9th Cir. 2012) (overturning California's ban on same-sex marriage, enacted through referendum after it had already been legalized by the courts, and finding that "California is able to issue marriage licenses to same sex couples, as it has already issued 18,000 marriage licenses to samesex [sic] couples [in the four and a half months when marriage was legalized before Proposition 8 was passed] and has not suffered any demonstrated harm as a result."). Moreover, experiences in numerous other states illustrate that states can effectively manage changes to their marriage laws pending and following litigation concerning same-sex couples' access to marriage, and there is no need for this Court to issue a stay of its order.

Moreover, the status quo in Utah is that same-sex couples are marrying and that many married same-sex couples live in Utah and their marriages currently must be recognized. Imposing a stay would not preserve the status quo but would be changing it, again depriving same-sex couples of their constitutional right to civilly marry in Utah. As Salt Lake County has already demonstrated by its issuance of marriage licenses to same-sex couples under existing circumstances in Utah, the current status quo is that

6

same-sex couples have been issued marriage licenses in the ordinary course of the county's business, and many of those couples have now been legally married in Utah. Changing the status quo now would irreparably harm those same-sex couples in committed, loving relationships desiring to marry who have not as yet had an opportunity to obtain a marriage license to be married and would also irreparably harm the many same-sex couples living in Utah who already are married and whose marriages Utah must now recognize pursuant to this Court's order.

In sum, and as noted in *National Treasury Employees Union v. United States Department of Treasury*, 838 F. Supp. 631, 640 (D.D.C. 1993), "[the government's] attempt to portray potential harm as outweighing the individuals' constitutional privacy interests and Fifth Amendment claims [is] patently preposterous."  A similar conclusion should be reached here with respect to Plaintiffs' rights under the Fourteenth Amendment, and the State Defendants' motion denied.

**IV.     IF THE STAY IS GRANTED, PLAINTIFFS AND OTHER SAME-SEX COUPLES IN UTAH WILL BE IRREPARABLY HARMED**

This Court has found that Plaintiffs and other same-sex couples in Utah have been suffering constitutional injury due to Utah's laws.  Continuing deprivation of Plaintiffs' (and others') fundamental right to marriage and equal protection of the law constitutes irreparable harm.  In addition, as already discussed, the State Defendants admit that the State of Utah's prohibition on marriage by same-sex couples harms the Plaintiffs.

The undisputed harm that Plaintiffs and similarly situated same-sex couples in Utah have and will suffer if this Court's ruling does not remain the law pending appeal,

is not trivial; nor is it compensable. As the State admitted, as *Windsor* found, and as this Court so clearly articulated, that harm is of the highest magnitude:

> In contrast to the State's speculative concerns, the harm experienced by same-sex couples in Utah as a result of their inability to marry is undisputed. To apply the Supreme Court's reasoning in Windsor, Amendment 3 "tells those couples, and all the world, that their otherwise valid [relationships] are unworthy of [state] recognition. This places same-sex couples in an unstable position of being in a second-tier [relationship]. The differentiation demeans the couple, whose moral and sexual choices the Constitution protects." Windsor, 133 S. Ct. at 2694 . . . . And while Amendment 3 does not offer any additional protection to children being raised by opposite-sex couples, it demeans the children of same-sex couples who are told that their families are less worthy of protection than other families.

Order at 50.

Indeed, courts reject stay applications in order to protect the individual constitutional rights of plaintiffs. *See, e.g.*, *Armstong v. O'Connell*, 416 F. Supp. 1325 (E.D. Wis. 1976) (denying stay requested by public school officials of an order granting injunctive relief to plaintiffs on federal equal protection claim); *Fortune v. Molpus*, 431 F.2d 799 (5th Cir. 1970) (overturning the district court's stay of an order requiring university to allow a civil rights activist to speak on campus). Furthermore, while

> [f]ederal courts should be wary of interfering with the voting process, . . . " 'it is always in the public interest to prevent the violation of a party's constitutional rights.' " *Awad,* 754 F.Supp.2d at 1308 (quoting *G & V Lounge, Inc. v. Mich. Liquor Control Comm'n,* 23 F.3d 1071, 1079 (6th Cir.1994)). "While the public has an interest in the will of the voters being carried out ... the public has a more profound and long-term interest in upholding an individual's constitutional rights." *Id.; see also Cate v. Oldham,* 707 F.2d 1176, 1190 (10th Cir.1983) (noting "[t]he strong public interest in protecting First Amendment values").

*Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012)

The State Defendants' trivialize Plaintiffs' constitutional rights when they argue that a stay "at most" would lead to a delay in their ability to exercise those rights. Motion at 4. Not only do the State Defendants ignore that every day a citizen is deprived of constitutional rights causes irreparable harm, but they ignore their own admission of the actual harm Plaintiffs have suffered. Moreover, they wholly ignore this Court's finding of irreparable harm -- harm that cannot simply be recompensed if the appellate court affirms this Court's decision. That harm is clearly brought home by the harm that the Plaintiffs Archer and Call will suffer if a stay is issued. It is undisputed that Plaintiffs Karen Archer and Kate Call are facing the real and patent risk that Karen will not survive long enough for an appeal court to reach a decision on this Court's ruling.[2] Contrary to the State Defendants' position, a delay for these Plaintiffs would be tragic, and not a mere inconvenience.

In this case, the fact that Plaintiffs would continue to suffer violations of their constitutional rights and irreparable injury through ongoing ineligibility for civil marriage and the State's refusal to recognize existing marriages weighs in favor of denying the requested stay.

---

[2] Not only is that risk indisputably proven in the record before this Court, *see* Order at 5-6, but it is a tragedy that has already occurred in other such cases. *See e.g.*, *Obergefell v. Wymyslo,* 2013 WL 5934007, Case No. 1:13-CV-501 (S.D. Ohio, Nov. 1, 2013)*,* (in case where same-sex couple sought to have their legal out-of-state marriage recognized in Ohio for purposes of identifying surviving spouse on death certificate where one of the plaintiffs was terminally ill, that plaintiff passed away before the case could be resolved).

## V. THE PUBLIC INTEREST WILL BE HARMED BY A STAY

"The public has an interest in constitutional rights being upheld and in unconstitutional decisions by the government being remedied." *See Planned Parenthood of Arkansas & E. Oklahoma v. Cline*, 910 F. Supp. 2d 1300, 1308 (W.D. Okla. 2012) (citing *Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012)). Indeed, there is no "public interest" in depriving a class of Utah's citizens their constitutional rights while appellate review is pursued. *See, e.g.*, *Scott v. Roberts*, 612 F.3d 1279, 1297 (11th Cir. 2010) ("[T]he public, when the state is a party asserting harm, has no interest in enforcing an unconstitutional law.") This is true even where the laws at issue are the result of a popular vote. *See Awad*, 670 F.3d at 1131-32 ("Appellants argue that the balance weighs in their favor because Oklahoma voters have a strong interest in having their politically expressed will enacted, a will manifested by a large margin at the polls. But when the law that voters wish to enact is likely unconstitutional, their interests do not outweigh Mr. Awad's in having his constitutional rights protected"). Granting a stay in this case would simply allow the State of Utah to continue to violate the constitutional rights of Plaintiffs and Utah's same-sex couples, which cannot be considered a legitimate public interest. Moreover, even if the Court were to find that allowing same-sex marriages to occur during the appeal process was harmful to the public interest, any such harm has already occurred.

The State Defendants speak of avoiding "a cloud of uncertainty" as to the status of same-sex marriage in the state as a purported public interest. However, of more importance to the public interest is the cloud of uncertainty that hangs each day over a

sizable portion of Utah's citizens who are being denied the right marry, and who as a direct result cannot plan for their retirement or their families; that uncertainty is particularly harmful to children, as noted by the Supreme Court in *Windsor*, and also acknowledged by this Court. *See* Order at 46. Each day of a stay would prevent gay and lesbian citizens in long-term, committed relationships from planning and doing a host of things that their heterosexual counterparts may do freely. These citizens face uncertainty due to the non-recognition of their family relationships, and the public interest is harmed by that.

Moreover, as the Supreme Court held in *Windsor* with regard to the children of same-sex couples in the United States and as this Court has specifically found with regard to the thousands of children of same-sex couples in Utah, the harm caused to these families is palpable, real and irreparable:

> If anything, the State's prohibition of same-sex marriage detracts from the State's goal of promoting optimal environments for children. The State does not contest the Plaintiffs' assertion that roughly 3,000 children are currently being raised by same-sex couples in Utah. . . . These children are also worthy of the State's protection, yet Amendment 3 harms them for the same reasons that the Supreme Court found that DOMA harmed the children of same-sex couples. Amendment 3 "humiliates [] thousands of children now being raised by same-sex couples. The law in question makes it even more difficult for the children to understand the integrity and closeness of their own family and its concord with other families in their community and in their daily lives." *Windsor*, 133 S. Ct. at 2694. Amendment 3 "also brings financial harm to children of same-sex couples," *id.* at 2695, because it denies the families of these children a panoply of benefits that the State and the federal government offer to families that are legally wed. Finally, Utah's prohibition of same-sex marriage further injures the children of both opposite-sex and same-sex couples who themselves are gay or lesbian, and who will grow up with the knowledge that the State does not believe they are as capable of creating a family as their heterosexual friends.

Order at 46.

The State has an obligation to protect those children, as well as children in what they deem the optimal family relationship. The public interest is in continuing to require the State to do so which mandates denial of the motion to stay.

### VI. POST *WINDSOR*, SEVERAL COURTS HAVE DENIED OR LIFTED STAYS LIKE THAT BEING REQUESTED BY THE STATE DEFENDANTS

The State Defendants urge this Court to "follow the example" of the Ninth Circuit in the California Proposition 8 litigation by granting a stay pending appeal. Motion at 2. In so doing, the State Defendants ignore the fact that, following the *Windsor* decision, the Ninth Circuit immediately lifted its stay. *See Perry v. Brown*, 725 F.3d 968, 970 (2013) ("The stay in the above matter is dissolved effective immediately."). In addition, courts that have considered this issue since *Windsor* have refused to stay their rulings or lower court rulings allowing same-sex couples to marry pending appeal. *See, e.g.*, *Garden State Equality v. Dow*, __ A.3d. __, 2013 WL 5687193 (N.J. Oct. 18, 2013) (declining to stay lower court ruling that New Jersey's marriage ban was unconstitutional); *Griego v. Oliver*, Case No. D 202 CV 2013 2757, Declaratory Judgment, Injunction, and Peremptory Writ of Mandamus, slip. op. at 2-3 (N.M. Dist. Ct. Sep. 3, 2013) (ordering county clerks in Bernalillo and Sandoval Counties to begin issuing marriages licenses to qualified same-sex couples based on court's determination that any exclusion of those couples from marriage was unconstitutional); *cf. Gray v. Orr*, No. 1:13-cv-08449 (N.D. Ill. Dec. 5, 2013) (granting injunction permitting a same-sex couple to marry before the effective date of recently enacted Illinois statute

eliminating the state's ban on marriage by same-sex couples). Accordingly, Plaintiffs urge this Court to follow the examples of all the courts that have considered whether to initiate or maintain a stay in this post-*Windsor* era, and deny the State Defendants' request.

## CONCLUSION

For the reasons discussed above, the Court should deny the State Defendants' request for a stay of the Order pending appeal because they have not met their burden of showing that they are entitled to such relief.

DATED this 22nd day of December, 2013.

**MAGLEBY & GREENWOOD, P.C.**

_____
Peggy A. Tomsic
James E. Magleby
Jennifer Fraser Parrish

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that I am employed by the law firm of MAGLEBY & GREENWOOD, P.C., 170 South Main Street, Suite 850, Salt Lake City, Utah 84101, and that pursuant to Rule 5(b), Federal Rules of Civil Procedure, a true and correct copy of the foregoing **PLAINTIFFS' OPPOSITION TO STATE DEFENDANTS' MOTION FOR STAY PENDING APPEAL** was delivered to the following this 22nd day of December, 2013, by:

[ ]     Hand Delivery

[ ]     Depositing the same in the U.S. Mail, postage prepaid

[X]     CM/ECF System

[X]     Electronic Mail

Philip S. Lott
  phillott@utah.gov
Stanford E. Purser
  spurser@utah.gov
UTAH ATTORNEY GENERAL
160 East 300 South, Sixth Floor
P.O. Box 140856
Salt Lake City, Utah 84114-0856

*Attorneys for Defendants Gary R. Herbert and Brian L. Tarbet, Acting Utah Attorney General*

Ralph Chamness
  rchamness@slco.org
Darcy Goddard
  dgoddard@slco.org
SALT LAKE COUNTY DISTRICT ATTORNEYS
2001 South State Street, S3500
Salt Lake City, Utah 84190-1210

*Attorneys for Defendant Sherrie Swensen*

/s/ signature