PHILIP S. LOTT (5750)
STANFORD E. PURSER (13440)
Assistant Utah Attorneys General
BRIAN L. TARBET (3191)
Acting Utah Attorney General
160 East 300 South, Sixth Floor
P.O. Box 140856
Salt Lake City, Utah  84114-0856
Telephone:  (801) 366-0100
Facsimile: (801) 366-0101
Email:  phillott@utah.gov
Email:  spurser@utah.gov
*Attorneys for Defendants Gary R. Herbert and John E. Swallow*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| DEREK KITCHEN, individually; MOUDI SBEITY, individually; KAREN ARCHER, individually; KATE CALL, individually; LAURIE WOOD, individually; and KODY PARTRIDGE, individually,<br><br>Plaintiffs,<br><br>vs.<br><br>GARY R. HERBERT, in his official capacity as Governor of Utah; BRIAN L. TARBET, in his official capacity as Acting Attorney General of Utah; and SHERRIE SWENSEN, in her official capacity as Clerk of Salt Lake County,<br><br>Defendants. | **STATE DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR STAY PENDING APPEAL**<br><br>Civil Case No. 2:13-cv-00217-RJS<br><br>Judge Robert J. Shelby |

**THE POST *WINDSOR* CASES CITED BY PLAINTIFFS ARE DISTINGUISHABLE**

The "post *Windsor*" cases the Plaintiffs cite are distinguishable.  *Garden State Equality v.*

*Dow*, __ A.3d. __, 2013 WL 5687193 (N.J. 2013) arose in New Jersey, which unlike Utah allowed same-sex civil unions. Additionally, the Supreme Court of New Jersey considered the defendants' motion for stay under New Jersey state law, not the law applicable in this case. The *Garden State* opinion does note a harm the State Defendants have identified here -- in California the California Supreme Court ordered the San Francisco county clerk to stop issuing marriage licenses to same-sex couples and to to take specific steps to nullify 4,000 licenses already issued. *Id.* citing *Lockyer v. City and Cnty. of San Francisco*, 95 P.3d 459, 464, 494 (2004).

The *Griego v. Oliver* case arises in New Mexico which, unlike Utah, has no law limiting marriage to only between a man and a woman.

And, the *Gray v. Orr* case simply granted a same-sex couple the right to marry before the effective date of a recently enacted Illinois statute allowing same-sex marriage. That in no way is similar to the situation before this Court.

It remains that the most similar case and the example this Court should follow is the that of the Ninth Circuit Court of Appeals in the Proposition 8 litigation. *See Perry v. Brown*, 671 F.3d 1052, 1070 (2012), *vacated and remanded*, *Hollingsworth v. Perry*, 133 S.Ct. 2652 (2013).

## THE LIKELIHOOD OF SUCCESS ON APPEAL

State Defendants have a significant likelihood of success on appeal. The district court's decision is wrong and ignores basic concepts of due process and equal protection. It reached conclusions that are unprecedented in Tenth Circuit and Supreme Court jurisprudence. Neither the Tenth Circuit nor the Supreme Court has ever held that a State is constitutionally prohibited from defining marriage as only the legal union of a man to a woman. Neither the Tenth Circuit

nor the Supreme Court has ever held that the fundamental right to marry includes same-sex marriage. Neither the Tenth Circuit nor the Supreme Court has ever held that the traditional definition of marriage somehow constitutes gender discrimination. And neither the Tenth Court nor the Supreme Court has ever held that the man-woman definition of marriage is, and apparently always has been, irrational, discriminatory and unconstitutional.

### A. The District Court Misconstrued Windsor

Instead of considering and basing its decision on the majority opinion in the *Windsor* case, the district court quotes and cites as conclusive authority the cynical observation in dissent of Justice Scalia of what the Supreme Court's view would be if considering state marriage laws. ("The court agrees with Justice Scalia's interpretation of *Windsor . . .*" Memorandum Decision (Doc. 90) at 13.) The district court's approach is to, in effect, "jump the gun" and join Justice Scalia in speculation about what the Supreme Court would do, not what it has done. The fact remains that the Supreme Court has not reviewed the constitutionality of a state law defining marriage as only the legal union between a man and a woman. *Windsor* did not establish a universal right to same-sex marriage. To the contrary, the central support upon which the *Windsor* decision stands is a State's, not the federal government's authority, to define and regulate marriage. The *Windsor* decision affirms rather than denies Utah's authority to define and regulate marriage.

In *Windsor* both the Second Circuit's and the Supreme Court's reviews of DOMA were limited to a federal statute that distinguished between lawfully married opposite-sex couples and lawfully married same-sex couples. The Supreme Court held only that "[t]he federal statute is

3

invalid, for no legitimate purpose overcomes the purpose and effect to disparage and to injure those whom the State, by its marriage laws, sought to protect in personhood and dignity." *Windsor*, 133 S. Ct. at 2696. If that statement was not limiting enough, the Court went on to emphasize that the Windsor "opinion and its holding are confined to those lawful marriages," meaning those same-sex marriages in States where same-sex marriage has been made legal. *Id*. at 2696.

### B. There Is No Fundamental Right to Same-Sex Marriage

The district court concedes that "the court's role is not to define marriage, an exercise that would be improper given the states' primary authority in this realm" and then proceeds to do exactly that by redefining marriage in such a broad way as to encompass same-sex marriage. Memorandum Decision (Doc. 90) at 16. The district court cites to and applies Supreme Court precedent recognizing a fundamental right to marry, cases that universally involve marriage between a man and a woman, as though the gender of the spouses is entirely irrelevant. The district court concludes that "the Plaintiffs here do not seek a new right to same-sex marriage, but instead ask the court to hold that the State cannot prohibit them from exercising their existing right to marry on account of the sex of their chosen partner." Memorandum Decision (Doc. 90) at 28.

### 1. The District Court Failed to Properly Apply *Washington v. Glucksberg*

By refusing to recognize that traditional man-woman marriage is materially different from same-sex marriage the district court sidesteps the binding precedent of *Washington v. Glusckberg*, 521 U.S. 702 (1997), which sets forth the "established method of substantive due

4

process analysis." *Id*. at 720.[1] That analysis "require[s] … a careful description of the asserted fundamental liberty interest." *Id*. at 722. Plaintiffs' asserted liberty interest here is the right to marry a person of the same sex. Plaintiffs' asserted interest, however, is manifestly distinguishable from the Supreme Court's decisions affirming a fundamental right to marry. Those decisions were premised on the relationship between a man and a woman.

In addition, this case is wholly unlike *Loving v. Virginia*, 388 U.S. 1, 10-12 (1967), which involved an invidious marriage system bent on racial oppression. The district court joins the Plaintiffs in begging the question when they presume that gays and lesbians are entitled to the same judicial protection accorded racial minorities, especially where the traditional definition of marriage exists not to oppress homosexuals but to further other vital social ends. In fact, as the district court itself recognizes, sexual orientation (unlike race) is not a suspect class entitled to strict or even heightened scrutiny. Memorandum Decision (Doc. 90) at 35-36.

The second factor to be considered in the Glucksberg "established method of substantive due process analysis" is to recognize only "those fundamental rights and liberties which are objectively, deeply rooted in this Nation's history and tradition." *Glucksberg*, 521 at 720-21. In the district court's view "tradition and history are insufficient reasons to deny fundamental rights to an individual." Memorandum Decision (Doc. 90) at 29 heading 3. Citing to and quoting *Lawrence v. Taylor*, 539 U.S. 558 (2003), the district court concludes that *Glucksberg's* history and tradition requirement does not apply to "a new set of facts that were previously unknown,"

---

[1] The district court states, "Because the right to marry has already been established as a fundamental right, the court finds that the Glucksberg analysis is inapplicable here." Memorandum Decision (Doc. 90) at 29.

meaning "the knowledge of what it means to be gay or lesbian." Memorandum Decision (Doc. 90) at 29.

The district court's refusal to consider history and tradition goes far beyond even the analysis applied by the Supreme Court in *Lawrence*. There, the Court stated, "[W]e think that our laws and traditions of the past half-century are of the most relevance here." *Lawrence*, 539 U.S. at 571-72. The relevant history and tradition here is that no State permitted same-sex marriage until 2003. *Goodridge v. Dep't of Public Health*, 798 N.E.2d 941 (2003). Even abroad, no foreign nation allowed same-sex marriage until the Netherlands in 2000. *Windsor*, 133 S. Ct. at 2715 (Alito, J., dissenting). The fact that, in the last 10 years of this Nation's 237 year history, a minority of States have permitted same-sex marriage does not transform same-sex marriage into a "deeply rooted" historical and traditional right. No interest still inconsistent with the laws of over 30 states and with the ubiquitous legal traditions of this country until a decade ago can be called "deeply rooted."

The *Lawrence* case cited by the district court is by its own terms irrelevant to the issue of legal recognition of same-sex unions.[2] The Court majority expressly stated the case "does not involve whether the government must give formal recognition to any relationship that homosexual persons seek to enter." *Lawrence*, 539 U.S. at 578. *Lawrence* did address the

---

[2] In its analysis of Lawrence the district court again, instead of focusing on the majority opinion and its express limitations, focuses on a dissent from Justice Scalia to discern what the decision means. "The court therefore agrees with the portion of Justice Scalia's dissenting opinion in Lawrence in which Justice Scalia stated the Court's reasoning logically extends to protect an individual's right to marry a person of the same sex." Memorandum Decision (Doc. 90) at 31.

criminalization of private adult consensual homosexual conduct, but the Court did not even declare a fundamental right for that conduct. *See* 539 U.S. at 586 (Scalia, J., dissenting) ("nowhere does the Court's opinion declare that homosexual sodomy is a 'fundamental right' under the Due Process Clause"). Further the Court in *Lawrence* did not subject the law at issue to strict scrutiny, the standard of review that would have applied had a fundamental right been involved. *Id*. at 578. ("The Texas statute furthers no legitimate state interest.").

In her concurring opinion Justice O'Connor pointed out that Lawrence did "not involve public conduct . . . It does not involve whether the government must give formal recognition to any relationship that homosexual persons seek to enter." *Lawrence*, 539 U.S. at 585 (O'Connor, J., concurring). Justice O'Connor also emphasized that in such a case, "preserving the traditional institution of marriage" would itself constitute a legitimate state interest under rational basis review and that "other reasons exist to promote the institution of marriage beyond mere moral disapproval of an excluded group." *Id*.

The district court's decision "place[s] the matter outside the arena of public debate and legislative action" and constitutes the "policy preferences of the [court]." *Glucksberg*, 521 U.S. at 720.  The district court has failed to give proper recognition and deference to the fact that in the majority of States where same-sex marriage has been adopted it has been accomplished through the democratic process rather than by judicial decree. *See* State Defendants Motion for Summary Judgment (Doc. 33) at xiv-xv. And, the district court's decision constitutes a fundamental shift away from society's understanding of what marriage is and overrides the democratic voice of the people of Utah .

7

### C. There Is No Sex Discrimination

The district court also erroneously held that the man-woman definition of marriage is really gender discrimination warranting intermediate scrutiny under the Equal Protection Clause. Mem. Dec. at 34-35. Defendants never conceded that its marriage laws discriminated based on gender. To the contrary, State Defendants consistently maintained that the laws are not discriminatory because they "are generally and neutrally applicable to both genders." State Defendants' MSJ at 23; see also State Defendants' MSJ Response at 25-26 ("the Utah marriage statutes do not discriminate between men and women. In prohibiting any person— man or woman—from marrying a person of the same sex, Utah law treats men and women equally."). That meaning, as State Defendants pointed out to the district court, does not constitute gender discrimination because it treats men and woman equally. *See id.*; *Sevcik*, 911 F. Supp. 2d at 1005; *Jackson*, 884 F. Supp. 2d at 1098-99 (citing at least nine other cases and noting agreement with the "vast majority of courts considering the issue" that the traditional definition of marriage "does not constitute gender discrimination.").

The court's second error flowed from its attempt to liken manwoman marriage to the anti-miscegenation laws struck down in *Loving v. Virginia*, 388 U.S. 1 (1967). See Mem. Dec. at 35. But that flawed comparison overlooks, among other things, the fact that the antimiscegenation laws at issue in Loving were overtly discriminatory on the basis of race (the precise class of people the Fourteenth Amendment was enacted to protect).

### D. The District Court Misapplied the Rational Basis Test

The district court also wrongly concluded that Utah's marriage laws do not even satisfy

8

the minimal requirements of the rational basis test. In other words, the court held that the man-woman definition of marriage bears no rational relationship to any legitimate state interests. Mem. Dec. at 41. In the district court's view, this age-old institution is irrational, discriminatory and unconstitutional.

But numerous state and federal courts (at the trial and appellate court level) have reached the opposite conclusion. These courts have found that the traditional definition of marriage is rationally related to at least two legitimate state interests. In short, man-woman marriage promotes the State's compelling interest in the care and well-being of children (and society) by facilitating responsible procreation and the ideal mode of child-rearing. See, e.g., *Lofton v. Secretary of the Dep't of Children & Family Servs.*, 358 F.3d 804, 819 (11th Cir. 2004) ("It is hard to conceive an interest more legitimate and more paramount for the state than promoting an optimal social structure for educating, socializing, and preparing its future citizens to become productive participants in civil society.").

First, because "[a] democratic society rests, for its continuance, upon the healthy, well-rounded growth of young people into full maturity as citizens, with all that implies," the government "may secure this against impeding restraints and dangers, within a broad range of selection." *Prince v. Massachusetts*, 321 U.S. 158, 168 (1944). Accordingly, Utah could rationally "find that an important function of marriage is to create more stability and permanence in the relationships that cause children to be born. [Utah] thus could choose to offer an inducement—in the form of marriage and its attendant benefits—to opposite-sex couples who make a solemn, long-term commitment to each other." *Hernandez v. Nobles*, 855 N.E.2d 1, 7

(N.Y. 2006) (plurality op.). Many other judicial decisions have reached the same conclusion.

Second, traditional marriage increases the likelihood that children will be raised by their biological parents. And Utah could rationally conclude that, all things being equal, it is better for children to grow up being raised by both their mother and a father. *Hernandez*, 855 N.E. 2d at 7 (plurality op.) ("[i]ntuition and experience suggest that a child benefits from having before his or her eyes, every day, living models of what both a man and a woman are like."); *In re Marriage of J.B. & H.B.*, 326 S.W.3d at 678 ("[t]he state also could have rationally concluded that children are benefited by being exposed to and influenced by the beneficial and distinguishing attributes a man and a woman individually and collectively contribute to the relationship."); *Anderson*, 138 P.3d at 983 ("the legislature was entitled to believe that providing that only opposite-sex couples may marry will encourage procreation and child-rearing in a 'traditional' nuclear family where children tend to thrive."). Indeed, society (and Supreme Court jurisprudence) have "always presumed [biological parents] to be the preferred and primary custodians of their minor children." *Flores*, 507 U.S. 292 at 310; *see also Bowen*, 483 U.S. at 614 (Brennan, J., dissenting) ("'[t]he optimal situation for the child is to have both an involved mother and an involved father.'" (quoting Henry B. Biller, *Paternal Deprivation* 10 (1974)).

The mere fact that so many other courts have found the traditional definition of marriage to satisfy rational basis review is reason enough to conclude that State Defendants have a sufficient likelihood of success on appeal to warrant a stay pending appeal of the district court's order.

The district court's flawed rational basis analysis resulted in large part from its failure to

frame the issue properly. According to the court, its "focus is not on whether extending marriage benefits to heterosexual couples serves a legitimate governmental interest. . . . [Rather,] [t]he court must . . . analyze whether the State's interests in responsible procreation and optimal child-rearing are furthered by prohibiting same-sex couples from marrying." Mem. Dec. at 42-43.

The district court could hardly have framed the issue more incorrectly. The Supreme Court has held that a classification subject to rational basis review will be upheld when "the inclusion of one group promotes a legitimate governmental purpose, and the addition of other groups would not." *Johnson v. Robison*, 415 U.S. 361, 382–83 (1974). As the federal district court in *Jackson* explained:

> [T]he state is not required to show that denying marriage to same-sex couples is necessary to promote the state's interest or that same-sex couples will suffer no harm by an opposite-sex definition of marriage. . . . Rather, the relevant question is whether an opposite-sex definition of marriage furthers legitimate interests that would not be furthered, or furthered to the same degree, by allowing same-sex couples to marry.

*Jackson*, 844 F. Supp. 2d at 1106-1107.

Traditional man-woman marriage promotes the State's interest in responsible procreation and in the optimal mode of child-rearing. Same-sex couples, who cannot procreate, do not promote the State's interests in responsible procreation (regardless of whether they harm it). Utah's choice to define marriage as between a man and a woman is therefore constitutional.

## **CONCLUSION**

This Court should follow the example of the Ninth Circuit Court of Appeals in the Proposition 8 litigation and grant a stay pending appeal. *See Perry v. Brown*, 671 F.3d 1052, 1070 (2012), *vacated and remanded*, *Hollingsworth v. Perry*, 133 S.Ct. 2652 (2013).

Alternatively, the Court should grant a stay at least until the Tenth Circuit Court of Appeals has considered and ruled on the State Defendants' Motion for Stay Pending Appeal. District Court Judge Vaughn R. Walker granted such a stay in the *Perry v. Schwarzenegger* Proposition 8 litigation.

Dated this 23rd day of December, 2013.

                BRIAN L. TARBET
                Acting Utah Attorney General

                /s/ Philip S. Lott
                Philip S. Lott
                Stanford E. Purser
                Assistant Utah Attorneys General
                *Attorneys for Defendants Gary R. Herbert and Brian L. Tarbet*

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of December, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which sent notification of such filing to the following:

Peggy A. Tomsic                tomsic@mgplaw.com
James E. Magleby             magleby@mgplaw.com
Jennifer Fraser Parrish         parrish@mgplaw.com
MAGLEBY & GREENWOOD, P.C.
170 South Main Street, Suite 850
Salt Lake City, UT 84101-3605

Ralph Chamness                rchamness@slco.org
Darcy M. Goddard             dgoddard@slco.org
Salt Lake County District Attorneys
2001 South State, S3500
Salt Lake City, Utah 84190-1210

                /s/ Philip S. Lott